Thank you, Your Honor. May it please the Court, Deputy Attorney General Allison Chung, for responding to an appellant. I would like to reserve two minutes for rebuttal. Although the issue of procedural default was briefed by both parties in this case, I will focus my argument today on the issue of whether the District Court properly determined that Petitioner demonstrated actual prejudice under Brock v. Abramson. Petitioner is not entitled to federal habeas relief because the presence of the stun belt did not have the substantial or injurious effect or influence on the jury's verdict. No juror saw the stun belt, and its presence had no impact on Petitioner's decision to testify at trial. Moreover, the evidence was overwhelming, and Petitioner had no viable or credible defense. First, the trial court found the stun belt was not visible to the jury. Prior to remand at the District Court in this case, this Court found that it must accept the trial court's finding that the stun belt was not visible to the jury. Nothing at the evidentiary hearing in this case changed that presumption. May I ask you something about the case that I find a little troublesome? As I understand it, at the outset, before the trial, he said to the judge, we don't think he needs a stun belt because there's, and we object to the use of the stun belt because there's no indication that he's likely to cause any disruption in the court. And that was rejected. And that, my question to you is, is that enough to raise under state law the question whether he was being, for psychological reasons, was going to have problems in communicating with his lawyer, in testifying, and so on, or does he have to say something more than that in order to raise the issue? Well, Your Honor, that was discussed in the procedural default portion of the argument. And it's Respondent's belief that the petitioner ---- You would agree, wouldn't you, if all his lawyer said is we object and the judge said overrule, that that might not be enough? That's correct, Your Honor. However, at the time ---- It was not enough, Your Honor, because at that time, at the start of trial, before any testimony was heard, the objection was strictly limited to whether or not there was a basis or good cause to put the belt on in the first place. At that time, there was no question of whether or not the belt was going to, in fact, affect his ability to communicate with counsel. No. But the ---- We've already decided ---- That's correct, Your Honor. ---- that the use of the Stone Belt was unconstitutional. Correct. However, in answer ---- The only question left is whether that was prejudicial. That's correct. And when he said to the State trial court it's unconstitutional because there's no reason for it, that's all he had to say. He only had to say it's unconstitutional. He didn't have to say what the prejudicial effect was. Well, correct. It's unconstitutional, it's unconstitutional. He doesn't have to say to the district or to the trial court, and here's what's going to happen to me, here's my prejudice from. And he just has to say you shouldn't do it because it's unconstitutional. Well, that's correct, Your Honor. But at that point when the objection was made, the prejudicial effect of the Stone Belt wouldn't have been apparent to the ---- He didn't say in the trial court that it was unconstitutional, as I understand it. All he said was it's unnecessary. That's correct. Which makes it unconstitutional. I ---- Well, I would respectfully disagree, Your Honor. If you use the Stone Belt and it's not necessary, you find it's a restraint and it's not necessary to use this restraint, isn't that a violation of the Constitution? Well, there was no specific constitutional provision cited by the ---- by defense counsel at the time the objection was made. Well, the ---- it's been decided. Oh, that's true, Your Honor. It's unconstitutional and they made it sufficient. That's correct. Why did he say it was unconstitutional? Well, prior to remand, the Ninth Circuit, another panel of the Ninth Circuit found that there was no good cause for ---- All right. For the trial court's order. Isn't there whether he exhausted estate remedies? That's ---- isn't that open to us now? Well, at trial ---- I'm sorry, Your Honor. I don't know. Maybe it's not open to us under the remand, but I thought there was something which raised that other issue in the case. There was an exhaustion issue as to whether or not the Petitioner's Trial Counsel ---- the Petitioner's Trial Counsel's testimony at the evidentiary hearing was clearly exhausted, and it was Respondent's position that it was not because it was never presented to any State court, either on direct appeal or ---- Let's try to get the question straight. Okay. All right. It was the constitutional violation he exhausted. He ---- Because we have already held that it's a constitutional violation. Yes. And all he needed to do to show the constitutional violation was that it wasn't necessary. Well, this Court ---- it's true that this Court did find that there was no good  If that's what the prior decision, published opinion, says, then yes. Well, I think that's what it says. I can go read it now. Do you know what it says? Well, I believe that it just found that the decision to fit the Petitioner with the Sun Belt was an error, and they found that the court ---- Why was it an error? Because the trial court didn't make its own individualized determination as to whether the belt should be put on this particular defendant. It had relied on the bailiff, who had said that Petitioner had been acting up, was uncooperative, and was a third striker. All right. And so what they said was that there was not a ---- I think where Judge Friedman started, that the State didn't show that it was necessary for him to have a Sun Belt. I don't know if the State found it unnecessary. Pardon me? I'm sorry. I don't think the State court found it unnecessary. I believe the State court did. No, no, we found it unnecessary. That's true. Okay. And so we found that he established that it was unconstitutional, which is what he told the district ---- what he told the trial judge. It's unconstitutional. He didn't use those precise words, Your Honor, but he did object. He made a general objection. And that was enough to establish a constitutional violation. According to this Court, yes. Yes. Okay. Well, that's where we're starting from that. Okay. Okay. Well, going to the prejudice progress. Then the prejudice. He didn't need to tell the district court, I mean the trial court, how it was prejudicial. All he had to do is say it's unconstitutional. Well, that's ---- What difference did it make how it was prejudicial? All you have to tell the trial court is that you're restraining me in violation of my rights. Well, Your Honor, it's our position, respectfully, that he didn't make a precise enough objection at the time of trial, not at the initial phase when he made the first objection, and not when the course of trial ran and he made no subsequent objection. He made enough of an objection to show it was unconstitutional. I ---- I mean, you're stuck with what we've already decided. Well, that ---- But that's not the precise issue. No, no. But I'm just trying to say where we're starting from. Okay. We're starting from the fact that he told the trial court enough to tell them that it was unconstitutional. Yes. Okay. Which is all he has to tell the trial court, right? According to this Court precedent, yes. Okay. So now you're saying he has to tell them not only that it's unconstitutional, but what his prejudice is going to be because it's unconstitutional. Well, how that the restraint would affect him at trial, yes, because it was incumbent on him to ----  Because the trial court wouldn't necessarily be aware that he allegedly didn't know how the belt was going to affect him mentally. But why does he have to tell them that? He told them it's unconstitutional. And what ---- why do you have to tell the trial court anything more than it's unconstitutional to make me wear this belt? I would assume that under certain circumstances, it would depend on what was apparent to the trial court, what the petitioner decided to tell the trial court at that precise moment in time. Well, all right. Those are a lot of nice words, but it's not enough to tell them that it's unconstitutional if it is unconstitutional. He told them enough to let them know that it was unconstitutional. According to this Court's precedent, yes. He made a general objection in that. Well, he keeps saying according to this Court's precedent, but that's where we're starting from. Okay. We're starting from the fact that it has been established that he told them that it was unconstitutional and enough to let them know that it's unconstitutional. Even assuming ---- But he never said so explicitly, did he? No, he didn't, Your Honor. He never said to them it's unconstitutional. What he said is you don't need it, and then the question is, if you don't need it, that would justify the inference that it's unconstitutional. Correct. But he never said to the judge, if you use the stun belt on me, you're denying me my constitutional rights. Correct. We've already found that it was enough to establish the fact that it was unconstitutional, that that's all you have to tell the judge. And given that, nothing in the evidentiary hearing in this case changed the presumption that the trial court said that the restraint was invisible to the jury. Wasn't his objection enough to alert the trial judge that he was objecting to the adverse psychological consequences of wearing a stun belt? It's our position that it's not, Your Honor. Well, I don't know. Why do you have to tell the trial judge anything more than is necessary to establish that it's unconstitutional? Now, you know, you may not agree that it was enough, but we're starting from the fact that this Court has said that what he told the trial judge was enough to establish that it's unconstitutional. Specificity is always required. Pardon me? Specificity is always required in trial court objection, Your Honor. Otherwise, that ---- I can't understand. Specificity ---- Specificity is always required for trial court objections. But you're not saying ---- Are you saying that he didn't tell them enough? He didn't tell them. No. Hold on. Wait till the whole question. Are you saying he did not tell them enough to warrant a determination that it was unconstitutional? Yes. But that's contrary to what this Court has decided. Yes. Okay. Well, let's not do that. Let's ---- Okay. I mean, you know, I understand why you don't like the decision that we issued. That's correct. But we have to start from the fact that we've issued a decision, we've made a finding, and if you're telling us that we ought to reverse that, is that what you want us to reverse, the prior decision? No, no, no. Our request, our request for relief is from the district court's order conditionally granting habeas root. Okay. So you're willing to accept the fact ---- We are bound. This Court is bound by that prior decision. You're bound by the court's finding that he told them enough to ---- Yes. Okay. So then why does he have to tell the court more than it's unconstitutional? Why does he have to tell the court what the prejudicial effects will be? Well, so that the court could make a determination, a follow-up determination whether or not less restrictive alternatives are available in terms of the type of restraint that's used. For example, the magistrate judge used the example ---- But that wouldn't have affected anything. It would have affected whether or not the Petitioner was ---- whether the restraint was taken off the Petitioner before his trial testimony, for example. I mean, if he believed that his demeanor changed drastically once the belt was put on and he went up to the stand and was going to testify anyway, the trial court should have been alerted to the fact that this belt could have consequences on his demeanor on the stand. Without any knowledge, the trial court ---- But he didn't need to tell that. He didn't need to tell anything more than he told them to have it declared unconstitutional. That legal question, true. However, the court at the time had to know, had to be told by only the defendant and the Petitioner that the belt was going to restrict his communication with counsel or was going to somehow impair his ability to testify. He didn't have to tell them anything more than he told them to allow the district court or compel the trial court to say this is unconstitutional. That's what we said. Okay. Are you familiar with the United States Supreme Court case of Getters v. United States? No, I'm not, Your Honor. It wasn't cited in the briefs, but it is a Supreme Court case where they found constitutional error without any showing of prejudice when counsel was either totally absent or prevented from assisting the accused at the critical state of the proceeding. To give you a chance to ---- The Getters case is at 425 U.S. 183, a 1976 case, which was cited with approval in 1984 by U.S. v. Chronic. I think those two decisions are critical to your case. Well, I ---- I realize that we probably should have asked you to be prepared to talk about them, but we didn't do that, so. Well, you mentioned that there was a complete absence of counsel in that case. However, that wasn't the case here. Trial counsel and petitioner had the ability to speak during breaks, which the magistrate judge found. And the things that petitioner found false is ---- One of those cases held that if you told counsel, told petitioner or counsel that they couldn't speak together overnight, that was a complete deprivation. Well, even assuming there was a complete deprivation, Your Honor, it's clear that based on the four precise things that petitioner found fault with at trial, that he testified that he wished he could have told counsel at the time of trial, none of those things would change the jury's verdict in this case. For instance, he said that he would have told counsel that one of the neighbors, Dawn Grable, didn't have her glasses on at the time. Now, the fact that she didn't have her glasses on was well known to counsel, to trial counsel, before she testified. He testified at the evidentiary hearing that he was aware of any discrepancies between her proffer to the prosecution as well as the police reports. And trial counsel at trial was also given the opportunity before she testified of an interview with that witness so as to elicit additional evidence from her or additional information from her. But what about the effect of the jury that they said he sat, didn't talk to his lawyer, just looked straight ahead, and he said it was because of the sunbelt? None of the jurors that testified, Your Honor, said that that, his demeanor at trial, affected their determination as to his guilt. The only witness at the evidentiary hearing that testified as to the effect of his demeanor at trial was an alternate juror, alternate juror Kevin McNutt. And McNutt testified that his petitioner's demeanor at trial was a little odd, a little odd, and detached. But he also found that Petitioner didn't testify at all at trial, which was, you know, completely not the case here. And also given the fact that McNutt was an alternate juror and didn't testify, anything that he observed could not have affected the jury's verdict in this case. But we can't know that. Well, we can because none of the jurors testified that the Petitioner's demeanor at trial affected their decision in this case. Thank you, counsel. Good afternoon. Margot Racone for Appelli and Cross-Appellant Frederico Gonzalez. Were you the one that was here this morning?  Yes. Okay. You're the one who was going to give a review? Yes. It's been put over until 3. So we're good. I'll just start by pointing out to the Court a couple of things. The argument with respect to prejudice, the appellant argues that we need to show how the trial or Mr. Gonzalez's testimony would have been different. Had he not been wearing the stun belt. And I don't think that that's a fair reading of the cases. In the United States v. Duran case, the 11th Circuit case, that case talked specifically about, this was a stun belt case, where the defendant had a stun belt on and he had, basically there was an impediment to him being able to follow the proceedings, to be able to actively participate in his defense. And the argument by the government was that he could not show how things would have gone differently if he hadn't had this stun belt on. And the Court held that and reversed the conviction based upon the stun belt by saying that having to show such a thing would eviscerate the right in all cases where there is strong evidence of proof of guilt. And the right to be present at one's own trial is not that weak. So this is a substantial right that was infringed upon. And in this case, in the United States v. Duran, the conviction was reversed because of the stun belt and its effects. With respect to the evidence here, there is evidence. I think the most important thing is that Mr. Gonzalez's demeanor was undermined at the time he testified. That was critical because in this case it was sort of a his word against the word of Mr. Logan, the alleged victim. And it was really his only defense. The defense was that Mr. Logan misperceived the evidence, I mean, misperceived the incident and thought that it was a robbery when in fact it wasn't. So his word against Mr. Logan's, it was very important how he appeared, how his demeanor was when he testified. And in this case, because of the stun belt, and there's a lot of corroboration here. There are seven witnesses that we presented at the evidentiary hearing that corroborate how Mr. Gonzalez's demeanor was. He was sweaty. He was nervous. He was afraid of the stun belt. He couldn't even lean forward to get close enough to the microphone. And he actually pointed to the stun belt. When they asked him to speak up, he pointed at the stun belt. And he said on the record that he was nervous. He looked straight ahead, and Juror Krause said that he didn't make eye contact at all with the jurors and he didn't show any emotion on the witness stand. So we have a lot of corroboration. We have his lawyer who tells us how different he was from the time before he had the stun belt on and when he had the stun belt on. Let me ask a question about the testimony of Mr. Gonzalez and Mr. Lacey. The magistrate judge listened and did not believe that the belt interfered with Mr. Gonzalez's ability to participate in the defense. Don't we have to conclude that the magistrate judge made a credibility determination to which we have to defer? Well, in this instance, under the Federal Magistrates Act, the district court can defer, can delegate to a magistrate judge to hold a hearing, but any kind of recommendation is subject to meaningful de novo review. And, in fact, this court in U.S. v. Koenig said that the district court doesn't have to apply its own clearly erroneous standard to the determinations of the magistrate judge in order to go a different way. So, no. What weight, if any, should we give to the magistrate's decision? I'm sorry, Your Honor? What weight should we give, then, to the magistrate's decision in this case that he didn't believe the belt interfered with Mr. Gonzalez? I think little weight, given the fact that there were no clear credibility determinations. There wasn't any statement saying that she disbelieved any of the 11 witnesses who testified. So it's a matter of de novo review. Prejudice is a mixed question of law and fact. And so Judge Cooper, District Judge Cooper, was able to look at the transcript and readily see that, in fact, all the weight of the evidence showed exactly the opposite of that. Right. Well, is the real question here, since it's been held that the use of the stun belt was improper, how much and what did he have to show to establish prejudice? And I take it what he claims is, one, because of his concern, he didn't say things to his lawyer that he might have said, and two, that when he testified, instead of testifying rather fulsomely, all he did was sort of mutter, yes, no, or that kind of thing, even though his lawyer said that his testimony was about what he expected him to testify to. Now, I suppose there's a big difference if the lawyer says to him, I told the jury what you did, and that's not quite the same thing as saying to him, did you carry a gun, and he said no. Right. And I take it your argument is that it was prejudicial because it made it more difficult for him to present his defense. Is that basically what it is? That's exactly right. In fact, this case is very similar to the California Supreme Court's decision in People v. Mar, where they discussed the issue that this was the other stun belt case where the conviction was reversed because of the prejudicial effects of the stun belt. And in that case they talk about, and this defendant testified as well in a similar situation where it was his word against the victim's word. And they said that it was almost impossible to establish with any or to determine with any degree of precision how the substance of the defendant's testimony would have been different. And so they said it was reasonable to conclude that the stun belt did have some effect. So I don't know that we have to show exactly how it would have been different, although in the brief I do bring up a couple of issues. I don't think that's really required in this instance. Essentially his presumption of innocence was undermined. His credibility was undermined, which was critical to presenting his defense altogether. And his answers were short. They were quick. His lawyer said he just wanted to get up and off the stand as quickly as he could. And so this undermined. And actually Mr. Lacey, his trial lawyer, said that the body language and the lack of eye contact is exactly what jurors look at when they're determining the credibility of a witness. And he was basically his only witness in the case. There were two other witnesses, officers who were present at the scene or who came to interview the alleged victim after the incident. But they generally testified that Mr. Logan initially said that he hadn't seen the gun. And so there were some arguments there with respect to whether or not there was an actual gun present at the scene. And I'd like to touch upon something that appellant said with respect to Mr. McNutt. There were two jurors who talked about, who essentially are able to tell us, give us a little more information about the risk of prejudice here. And jurors aren't required to articulate the prejudice. That's something that the court has to determine. But in this case, Mr. McNutt actually did. And despite the fact that he was an alternate juror, this court in Dias v. Pool, it was a shackling case where a prospective juror saw the shackles and also another regular juror saw the shackles as well. But they used the prospective juror's testimony to show that it was likely that other jurors had seen the shackles as well. So I think you can look at Mr. McNutt as sort of a proxy for the other jurors who maybe didn't have recollection. And it's definitely competent evidence in that sense. Mr. McNutt testified that his observations of Mr. Gonzales' demeanor and body language, and I quote, led me to think maybe he's guilty. He didn't have to articulate the prejudice, but he did. That's exactly the issue. That's what we're afraid of with respect to infringing upon a defendant's constitutional right to go to trial without physical restraints. And Juror Soltero, she was the other juror who could articulate the prejudice as well. She said because he wasn't more proactive, because he wasn't interacting with his lawyer, that suggested to her that he had given up, that he had given up and he seemed resigned to his fate. So these all suggest that the prejudice is plain and apparent. And I think of the three issues that the court remanded for the district court to develop on prejudice, I think we could win on any one of those three. But when you take them all together, I think prejudice has been established here. And we'd ask the court to affirm the district court. So in response to Judge Weinhart's question, you're saying that it was remanded for the purpose of holding an evidentiary hearing to determine prejudice. Yes, Your Honor. And the suggestion was made that you didn't have to even show prejudice once it was unconstitutional. No, no, no. I mean the prejudice we did show the prejudice by developing the three questions as to whether or not he was able to. What Judge Nelson is saying is there are three questions. Okay. And I think Judge Friedman divided them into two issues. One of which they asked you to determine was regarding petitioners, whether he was restricted in his ability to communicate with counsel because of the issue. Yes, Your Honor. And that was one. And if you develop that, the case that Judge Nelson mentioned, that's then structural error where you don't need prejudice. That's what the United States v. Durham seems to indicate as well. Seems to indicate it's a pretty weak. Yeah. But you mean to say that that's what that case holds. Yes, I do. Okay. In other words, when we remanded it to determine three issues, one of them would result in structural error and you wouldn't have to show anything further. And the other two, you would have to show that they were prejudicial. Well, I think the issues of prejudice are exactly those three issues. Those three. Yes. So we developed those issues. And we were able to say. In one of them, you would need to establish the facts in order to show that you had established structural error. In the other two, you would have to establish enough facts to show that they were prejudicial. Yes, that's correct. I would agree with that. Right. And in this case, basically, I mean, in the brief, I've laid out some things that I thought could have been different that Mr. Gonzalez said he might have done differently had he been able to participate. But I think I just sort of fell for the trap here. I think actually we don't really need to show that. We don't need to show how he would have testified differently. But Mr. Lacy did say that when they practiced, when they had their practice sessions with his testimony, that he was able to give details, he was relaxed, he was much different than when he was testifying with a stun belt on. And so the difference would be his demeanor, which is the most important thing to his credibility. That's one of your three issues. Yes. Is how he would have testified. That's right. And it's very important since he was really the only one to testify in his defense. All right. Thank you. Thank you. I just want to point out that it was a credibility contest between the petitioner and the victim in this case, Brian Logan. But the credibility contest was clearly, there was no way that Petitioner was going to win any credibility contest with Logan because Logan's testimony was overwhelmingly corroborated in this case. I mean there's no question disinterested witnesses, Petitioner's own good friend of long standing and the boyfriend of Petitioner's sister testified against him. There was overwhelming corroboration in this case for the victim's testimony. Going to the Petitioner's statement that his evidentiary hearing was corroborated, well the magistrate judge rejected the Petitioner's credibility after having the evidentiary hearing in this case and implicitly found that Petitioner was not credible as well as finding that trial counsel wasn't credible in material aspects of their testimony. The magistrate judge found implicit or I'm sorry inherent inconsistencies in the Petitioner's own evidentiary hearing testimony and found him not to be credible and the district court erred by rejecting that credibility determination. The only other thing that happened was that his lawyer said I think I want to, I think you should testify in this case. And he said I'd like to testify but I won't testify, I'm scared. But if I should testify and I say the wrong thing, they're going to indict that thing on me so I'm not going to testify at all. Now if that had happened, you would agree that would have demonstrated prejudice, wouldn't you? Well possibly but in this case. Or would you say that despite his deciding not to testify, although his attorney wanted him to testify, that wasn't prejudicial because there's nothing he could have said that could possibly have overcome the strong evidence the other way. Well that's true, Your Honor. I mean there was overwhelming evidence against him. His defense, which he doesn't really add to at the evidentiary hearing, was inherently implausible. It was totally incredible as the magistrate judge found. It couldn't, there was no way that his defense at trial, supplemented by anything he could have said without being fitted with the stun belt, could have affected the jury's verdict in this case. It's simply overwhelming evidence and an implausible defense on his part and the stun belt or no stun belt would not have changed that fact. And going to the Petitioner's reliance on U.S. v. Durham, that was a direct appeal case. I'm a little way over but we'll give you another minute. Well that, again, that was a direct appeal case and in light of Fry v. Plyler, this Court has to use a Brecht standard in determining harmless error in this case, as this Court found prior to remand. And again, going to Petitioner's statement that Petitioner's answers and his statements at trial were short and quick, well, at the evidentiary hearing, the magistrate judge noted that his answers were short and quick there as well. So that was an implicit credibility finding against the Petitioner's claim that he was impeded somehow by the stun belt. The State court didn't make any ruling on the substance of the prejudicial. They found in the alternative. No, they found that it was procedurally barred, but in the alternative, they found that he could not have been prejudiced or that any error was harmless. How could they do that without a hearing? Well, they found that based on the fact that the stun belt was not seen by the jury and that it didn't deter him from testifying, that there couldn't have been any prejudice in this case. And as the Court may be well aware, there is no U.S. Supreme Court decision where there was a shackling or a stun belt issue where the jury didn't see the stun belt and the defendant did testify. So there was no U.S. Supreme Court precedent that compelled the State court to find prejudicial error in this case. Absolutely none whatsoever. Thank you. Thank you. Okay. Thank you both. The case to the third will be submitted. The Court will stand in recess for the day.
judges: Friedman, Nelson D. W., Reinhardt